# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 13, 2002

## STATE OF TENNESSEE v. BRADLEY R. FULCHER

**Appeal from the Circuit Court for Williamson County**
**No. II-1100-368-B    Timothy L. Easter, Judge**

---

### No. M2001-01864-CCA-R3-CD - Filed April 18, 2002

---

The defendant, Bradley R. Fulcher, appeals the Williamson County Circuit Court's denial of alternative sentencing for his convictions for aggravated burglary, a Class C felony, and theft of property valued over one thousand dollars but less than ten thousand dollars, a Class D felony. We affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Bradley R. Fulcher.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Mary Katharine Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant pled guilty to the charges pursuant to a plea agreement, by which he received concurrent sentences of seven years for each offense as a Range II, multiple offender. The issue of alternative sentencing was left to the trial court to decide. At the defendant's guilty plea hearing, the state presented the following factual account of the crimes: On June 26, 2000, the defendant drove Jarrett Guy and Brian Bryant to the home of Richard and Cynthia Chavez. While the defendant waited in his truck, Guy and Bryant broke into the Chavez home, ransacked the living room, and stole a television, videocassette recorder (VCR), stereo, and Sony PlayStation. The men also took two jewelry boxes, coins, and personal papers from a bedroom. Although the defendant never entered the Chavez home, he helped Guy and Bryant load the stolen items into the back of his truck. The three men used a green plastic tarpaulin that had been covering a woodpile on the Chavezes' rear deck to cover the items in the truck. The total value of the stolen items was $2,074.99.

Detective Adrian Breedlove of the Brentwood Police Department investigated the break-in and asked the defendant to come to the police station for an interview. During the interview, the defendant denied being a part of the burglary. However, during a second interview, the defendant admitted driving Guy and Bryant to the Chavez home and acting as a lookout for the burglary. He told Detective Breedlove that after the burglary, Guy and Bryant kept all of the stolen property, except for the green tarpaulin. The defendant had his wife bring the tarpaulin to the police station and give it to the police.

At the sentencing hearing, Amir Karshenas testified that he worked for American Bonding Company. He said that at the time of the hearing, the defendant had been his client for about eight months and that as part of the defendant's bond agreement, he required the defendant to telephone him every week. He also required the defendant to let him know when the defendant was going out of town. He said that the defendant had performed the agreement to his expectations and that the defendant had always appeared in court.

On cross-examination, Mr. Karshenas acknowledged telephoning the assistant district attorney and asking her to file a motion to revoke the defendant's bond on the basis that the defendant had been arrested for assault in Davidson County while awaiting sentencing for the offenses in question. He said that on the day that the trial court was to hear the state's motion to revoke bond, the defendant came to the courthouse early and left before court came into session. He acknowledged that the trial court had issued a capias for the defendant's failure to appear at the motion hearing.

The defendant testified that on the day of his bond revocation hearing, he panicked and left the courthouse before court came into session. He said that he turned himself in to the police later that day. He said that on the morning of the burglary, he told Guy and Bryant that he would not go into the Chavez home. He said that the green tarpaulin was the only item that he got from the burglary. The defendant acknowledged that between 1989 and 1995, he was arrested and convicted fourteen times. He said that since 1996, he had been convicted of only three misdemeanors. He said that he owned Fulcher's Drywall and that he would lose his business if the trial court denied alternative sentencing.

On cross-examination, the defendant acknowledged that his prior record spanned six pages of the presentence report, and he said that he had made a lot of mistakes. He said that he had used cocaine and also had abused Valium and Xanax. He said that at the time of the sentencing hearing, he had been in jail for two months and that he had not used marijuana for three months. He said that he thought that his probation had been revoked four times and that his parole had been revoked once.

The state introduced the defendant's presentence report into evidence. The report reveals that the then thirty-one-year-old defendant was married and a high school graduate. The defendant reported that he was in excellent health and that he had no mental illnesses. The report shows that between 1989 and 1995, the adult defendant was convicted of numerous felonies and misdemeanors, including robbery, theft of property valued over five hundred dollars but less than one thousand

dollars, theft of property valued at less than five hundred dollars, marijuana possession, driving with a suspended license, driving under the influence of an intoxicant (DUI), criminal trespassing, and disorderly conduct. From 1997 to 1999, the defendant also was convicted of marijuana possession, assault, and unauthorized use of a vehicle. The report reveals that the defendant's probation had been revoked twice and that his parole had been revoked once. According to the report, the defendant had been continuously employed in the drywall installation business since 1983, and he earned one hundred thousand dollars per year from Fulcher's Drywall.

The defendant argued that the following mitigating factors applied to his case: (1) that his conduct neither caused nor threatened serious bodily injury; (2) that he played a minor role in the commission of the offense; and (3) that he assisted authorities in locating or recovering any property or person involved in the crime. See Tenn. Code Ann. § 40-35-113(1), (4), (10). The trial court stated that the defendant was presumed to be a favorable candidate for alternative sentencing under Tenn. Code Ann. § 40-35-102(6). However, after hearing the testimony and considering the presentence report, the trial court stated that the following factors weighed against alternative sentencing: (1) confinement was necessary to protect society by restraining the defendant, who had a long history of criminal conduct; (2) measures less restrictive than confinement had frequently been applied unsuccessfully to the defendant; and (3) the defendant had a lack of potential for rehabilitation or treatment. See Tenn. Code Ann. § 40-35-103(1)(A), (B), -(103)(5). The trial court did not state whether any enhancement or mitigating factors applied to the defendant's case and ordered that the defendant serve his effective seven-year sentence in the Tennessee Department of Correction.

The defendant contends that the trial court erred in denying alternative sentencing, claiming that the trial court ignored the fact that since 1995, he has not been arrested for any felonies and has been convicted of only three misdemeanors. He claims that he "proved to the trial court that he has dramatically changed his lifestyle since 1996." The state argues that the trial court properly found that the defendant was not an appropriate candidate for alternative sentencing. We agree with the state.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When determining if incarceration is appropriate, a trial court should consider that (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing Tenn. Code Ann. § 40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancing factors set forth in Tenn. Code Ann. §§ 40-35-113 and -114. Tenn. Code Ann. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann.§ 40-35-103(5); Boston, 938 S.W.2d at 438. In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168.

Initially, we note that the defendant was sentenced as a Range II, multiple offender and, therefore, was not entitled to the presumption that he was a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). Nevertheless, based upon our de novo review, we conclude that the trial court did not err in ordering the defendant to serve his entire sentence in incarceration. The defendant testified that he had fourteen prior convictions, and he acknowledged that he had violated his probation and parole. Despite the defendant's contention that he has made "vast changes" in his life since 1996, he has continued to commit crimes, being convicted of three misdemeanors and the two felony offenses in question. The record demonstrates that the defendant's previous sentences involving release into the community have been unsuccessful and that the defendant does not reflect a high potential for rehabilitation. We believe that ample evidence exists to support the trial court's sentence of confinement.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE

-4-